1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  LEE JACOBS,                              CASE NO. 05CV0821-H (POR)

12                          Plaintiff,       **ORDER DENYING
                                             DEFENDANT'S MOTION**
13          vs.                              **FOR SUMMARY
                                             JUDGMENT OR PARTIAL**
14  MICHAEL CHERTHOFF, Secretary,            **SUMMARY JUDGMENT**
    Department of Homeland Security,
15  Immigration and Customs
    Enforcement,
16
                            Defendant.
17

18          On April 18, 2005, Plaintiff Lee Jacobs ("Plaintiff") filed a complaint against

19  Michael Cherthoff, the Secretary of the Department of Homeland Security, Immigration

20  and Customs Enforcement ("Defendant"), setting forth claims for retaliation and

21  discrimination in employment.  (Doc. No. 1.)  Defendant filed a motion for summary

22  judgment or partial summary judgment on August 18, 2006.  (Doc. No. 22.)  On

23  September 1, 2006, Plaintiff filed a response.  (Doc. No. 27.)  Defendant filed a reply

24  on September 11, 2006.  (Doc. No. 32.)  The Court held a hearing on September 18,

25  2006.  Beth Clukey, Assistant United States Attorney, appeared for Defendant and

26  Thomas Tosdal appeared for Plaintiff.  After reviewing the papers and hearing oral

27  argument, the Court DENIES Defendant's motion for summary judgment or partial

28  summary judgment.

**Background**

Plaintiff is a veteran of the United States military. (Pl.'s Ex. 1 ¶¶ 3-9.) He served as a Commissioned Officer in the United States Marines from 1977 to 1984. (Id., Ex. 1 ¶¶ 3-4.) He transferred to the United States Army in 1984, where he remained until August 1986. (Id., Ex. 1 ¶ 6.) Since 1986, Plaintiff has served as a Lieutenant Colonel in the United States Army Reserves. (Id., Ex. 1 ¶ 6.) He has been recalled to active duty several times since 1986. (Id., Ex. 1 ¶¶ 7-9.) From his military work, Plaintiff sustained permanent injuries to his spine, back, neck and knees. (Id., Ex. 2 at 128:7-140:10.)

On March 15, 1987, Plaintiff started work at the Department of Homeland Security ("DHS") as a special agent. (Def.'s Ex. A at 8:14-16; 12:2-4.) He became a senior special agent sometime around 1997 or 1998. (Id., Ex. A at 12:8-23.) Plaintiff worked at several DHS locations in and around San Diego. (Id., Ex. A at 14:2-18:4.) From 1998 to January 2003, he was assigned to the Resident-Agent-In-Charge/San Ysidro ("RAIC/SY") office. (Id., Ex. A at 15:21-16:18; Pl.'s Ex. 1 ¶ 11.) Mike Flax ("Flax") was Plaintiff's Group Supervisor at RAIC/SY. (Pl.'s Ex. 1 ¶ 12.) Robert Tine ("Tine") was the supervisor in charge of the RAIC/SY office from 1997 to mid-2000. (Def.'s Ex. D at 11:5-13.) Walter Collette ("Collette"), took over as Associate Special Agent in Charge in 2000. (Id., Ex. G at 12:5-15.) Tine and Collette reported to Special Agent In Charge ("SAIC") Edward Logan ("Logan"). (Id., Ex. G at 11:11-12.)

**A.    Plaintiff's Sexual Harassment Complaint**

In December 1999, Plaintiff claims his co-worker, Rachel Ealy ("Ealy"), told him that Tine asked her out on a dinner date. (Pl.'s Ex. 1 ¶ 18; Ex. 2 at 54:10-15, 95:1-11.) In January 2000, Plaintiff reported Tine's dinner invitation, which he classified as sexual harassment, to several supervisors who directed him to meet with Frank Marwood ("Marwood"), an Assistant Special Agent in Charge. (Def.'s Ex. A at 62:5-21, 64:1-21, 66:4-5; Def.'s Ex. E at 35:11-14.) Plaintiff met with Marwood, and complained of the alleged sexual harassment, and also made complaints about Flax's

actions as a group supervisor, and about alleged discrimination by Tine and Flax because of Plaintiff's military reserve status. (Pl.'s Ex. 2 at 70:1-5.) Plaintiff alleges that he indirectly raised a complaint against Collette as well, but not specifically by name. (Id., Ex. 2 at 71:1.) At the end of the meeting, Marwood informed him that someone would investigate his sexual harassment complaint. (Pl.'s Ex. 1 ¶ 22-29.)

Marwood subsequently informed Collette that a complaint was made by an employee about a supervisor alleging sexual harassment. (Def.'s Ex. E at 36:12-14; Ex. G at 28:21-29:2.) Marwood claims that he did not divulge the identity of the complainant to Collette at that time. (Id., Ex. G at 29:3-6.) Collette directed Marwood to report directly to SAIC Logan for further handling of the complaint. (Id., Ex. E at 36:14-21; Ex. G at 27:5-24, 29:20-30:5.)

Collette called Ealy in the Spring or Summer of 1999 to discuss the alleged sexual harassment incident. (Id., Ex. I at 46:23-47:4.) Collette told Ealy that if she felt harassed, she should report it so that the incident could be investigated. (Id., Ex. E at 40:10-16; G at 23:18-24:11.) Ealy informed Collette that she did not intend to pursue a complaint for sexual harassment and that the matter had been resolved with Tine. (Id., Ex. I at 48:1-15.)

**B.      Plaintiff's Assignment to the AMID Group**

In June 2000, the Commissioner of Customs directed RAIC/SY to provide two agents for a six month detail in the Air and Marine Interdiction Division ("AMID"), which controlled all marine vessels within Customs. (Def.'s Ex. E at 17:2-19; Ex. F at 1; Pl.'s Ex. 19 at 33:6-18; Ex. 4 at 43:14-22.)      The Commissioner's directive requested that the appointed agents have experience as Marine Enforcement Officers ("MEO") as well as prior boat handling experience. (Pl.'s Ex. 19 at 33:6-18; Def.'s Ex. F.) Flax approached the RAIC/SY employees as a group about the appointments and requested volunteers. (Id., Ex. 3 at 70:5-71:3.) Fidel Mcree and Jeffrey Burdett volunteered for the assignment. (Id., Ex. 3 at 71:18-21.)

/ / / /

1    Four RAIC/SY employees were identified as qualified candidates for the AMID
2  detail. (Def.'s Ex. E at 19:6-19.) Plaintiff was included among the candidates because
3  of his prior boat-handling experience. (Id., Ex. E at 18:5-6, 19:14-24.) Ultimately,
4  Collette selected McCree and Plaintiff for the AMID detail. (Pl.'s Ex. G at 37:1-20.)

5    Upon learning of his selection for the AMID detail, Plaintiff notified Flax that
6  he had neck, spine and lower back problems stemming from prior injuries, which would
7  affect his ability to perform the duties of the position. (Def.'s Ex. A at 102:12-103:1;
8  Pl.'s Ex. 2 ¶ 43.) Plaintiff alleges that he asked Flax on several occasions to be
9  removed from the AMID detail and Flax declined to remove Plaintiff each time. (Pl.'s
10  Ex. 2 ¶¶ 42-51.) Plaintiff provided Flax with his medical records, detailing his injuries.
11  (Def.'s Ex. A at 103:14-17, 104:5-7.) Plaintiff contends that Flax told Plaintiff that if
12  he reviewed Plaintiff's medical records, he would have to recommend Plaintiff for a
13  fitness-for-duty examination and that Plaintiff could lose his job if he failed. (Id.)

14    After the meeting with Plaintiff, Flax e-mailed Collette about his concerns over
15  Plaintiff's ability to meet the physical demands of the AMID position. (Def.'s Ex. H.)
16  He sent a copy of the e-mail to Plaintiff. (Id.) The e-mail stated in part that Plaintiff
17  notified Flax of his service related injuries which could be exacerbated by the duties of
18  the AMID detail, but that Plaintiff was willing to support the AMID mission. (Id.) Flax
19  further stated "I am concerned that I have received this information and if I let
20  [Plaintiff] go without reporting this to a higher authority, I or the Customs service might
21  be liable if [Plaintiff] gets hurt of becomes disabled . . . ." (Id.)

22    Soon after Flax sent the e-mail, Plaintiff sent a reply to Collette. (Id.) He stated:
23    I do have orthopedic problems that are known to Customs Human
     Resources and have been disclosed during every scheduled Customs
24    physical. Although I am not in perfect health, I am capable of safely
     participating in all duties assigned an S/A or MEO. I appreciate Mike's
25    concerns regarding my health, however, I work out on a regular basis and
     am probably physically stronger than 90% of the current Customs Agent
26    work force. Should my TDY assignment to AMID turn out to aggravate
     an existing orthopedic condition, I will let you know and return to
27    [RAIC/SY] . . . .

28  / / / /

1  (Id.)  Plaintiff claims that he wrote the e-mail because he did not want to undergo a

2  fitness-for-duty examination over fear of losing his job.  (Def.'s Ex. A at 107:1-21.)

3      Plaintiff was released from the AMID detail in October 2000.  (Id., Ex. A at

4  76:17-77:6.)

5  **C.      Plaintiff's Internal Affairs Complaint**

6      When Plaintiff left the AMID detail in October 2000, he was involved in the

7  Internal Affairs investigation of his AMID supervisor for drinking while on duty.

8  (Def.'s Ex. A at 94:14-95:8; Ex. M at 45:5-7.) During the same time, Plaintiff made a

9  formal complaint via the Harassment Task Force hotline to the Internal Affairs

10  Harassment Task Force on October 19, 2000.  (Id., Ex. N at 1067.)  Plaintiff told the

11  Internal Affairs Harassment Task Force that he was discriminated against and harassed

12  because of his disability.  (Id.)  He also complained that Flax and Tine, his superiors at

13  RAIC/SY, had retaliated against him because he was a member of the Army Reserves.

14  (Id.)  He also reported the alleged sexual harassment incident between Tine and Ealy.

15  (Id.)  Internal Affairs began a fact-finding inquiry on January 19, 2001 regarding

16  Plaintiff's sexual harassment complaint.  (Id.)

17  **D.      Plaintiff's Nonselection for Promotion**

18      Plaintiff applied for a group supervisor position at RAIC/SY, a GS-14 position,

19  on or about May 24, 1999.  (Def.'s Ex. A at 177:8-17; Ex. Q at 1.)  However, Customs

20  overlooked Plaintiff's application, and he did not receive priority consideration for the

21  GS-14 position.  (Pl.'s Ex. 1 ¶ 62.)  Due to the oversight, Plaintiff was given priority

22  consideration for the next available GS-14 position.  (Id.; Ex. 7 at 1.)

23      Despite the priority consideration, Plaintiff was not promoted in May 2001 when

24  a group supervisor position at RAIC/SY became available.  (Id., Ex. 1 ¶¶ 65-67.)  On

25  February 6, 2002, Collette issued a written "Justification For Non-Selection" ("the

26  justification").  (Def.'s Ex. R.)  Collette wrote that Plaintiff had not demonstrated the

27  level of ability and performance to become a group supervisor.  (Id.)  He listed several

28  reasons why he felt that Plaintiff was not the most qualified candidate, including: (1)

an incident in May 2000 with a fellow agent, Tamiko Francis, where Plaintiff "became irate;" (2) failing to maintain his government vehicle; (3) lateness and absenteeism during his tenure with AMID; (4) a demonstrated lack of managerial ability; and (5) a January 2001 letter of caution from Flax which cited Plaintiff's failure to open cases in a timely manner; factual inconsistencies in his written reports; submission of reports that were not properly reviewed; and failure to follow operating procedures in port investigations.  (Id.)

Plaintiff alleges Collette's stated reasons were false, trivial, or a pretext for retaliation.  Plaintiff claims that the Tamiko Francis incident was so minor that his supervisor, Larry Latocki, who witnessed the entire argument, did not intervene beyond requesting that Plaintiff and Francis tone it down.  (Pl.'s Ex. 8 at 27:1-25.)  Plaintiff also claims that he forgot to change the oil on his government vehicle once in 15 years of service because of a problem with his e-mail when he was transferred to the AMID detail and because of new forms for vehicle service which were issued a month prior to the incident.  (Id., Ex. 1 ¶¶ 107-111.)  Plaintiff further alleges that he did not know why he was removed from the AMID detail; he does not recall being late or absent.  (Id., ¶ 118.)  Finally, Plaintiff claims the letter of caution was patently false, evidenced by Flax's failure to cite to any specific instances to support the allegations made in the letter.

Plaintiff filed a complaint on April 18, 2005.  He sets forth claims for: (1) retaliation based on Plaintiff's assignment to the AMID detail; (2) discrimination/failure to accommodate based on Plaintiff's assignment to the AMID detail; (3) retaliation based on the denial of promotion; and (4) discrimination based on the denial of promotion. (Doc. No. 1.)

## Discussion

### A.    Standard of Review

Under Fed. R. Civ. P. 56, a court may grant summary judgment in favor of a party upon a claim "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A court must view the evidence "in the light most favorable to the party opposing the motion" when determining whether any genuine issues of material fact exist. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970) (citation omitted); see also Fontana v. Haskin, 262 F.3d 871, 876 (9th Cir. 2001). Material facts are only those that "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citation omitted).

The nonmoving party, however, may not rely solely on the mere allegations or denials of its pleading, but must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (citation omitted). Material facts are only those that "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248.

To survive summary judgment on a discrimination claim under Title VII, a plaintiff must first establish a prima facie case. Raad v. Fairbanks North Star Borough School Dist., 323 F.3d 1185, 1193-94 (9th Cir. 2003). When the plaintiff meets his initial burden of production, the burden shifts to the defendant to prove that its employment decision was motivated by nondiscriminatory reasons. Cornwell v. Electra Central Credit Union, 439 F.3d 1018, 1028-30 (9th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, (1973). The burden then shifts back to the plaintiff to prove that the defendant's proffered reason was a pretext. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000); McDonnell Douglas, 411 U.S. at 801-803.

"The requisite degree of proof necessary to establish a prima facie case for Title VII and ADEA claims on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (1994) (internal emphasis omitted) (citing Yartzoff v. Thomas, 809 F.2d 1371, 1375 (9th Cir. 1987), cert. denied, 498 U.S. 939 (1990)).  Additionally, a plaintiff can prove pretext by offering direct or circumstantial evidence "that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise unbelievable, or . . . directly, by showing that unlawful discrimination more likely motivated the employer."  Raad, 323 F.3d at 1194.  In this context, the Court should treat both direct and circumstantial evidence alike.  Palace, Inc. v. Costa, 539 U.S. 90, 99-100 (2003).  A plaintiff's subjective belief that his employer engaged in discriminatory conduct will not defeat a motion for summary judgment. Cornwell, 439 F.3d at 1028.

**B.     Analysis**

**1.     Retaliation: Assignment to the AMID detail**

In Count I of the complaint, Plaintiff alleges that his assignment to the AMID detail in July 2000 violated 42 U.S.C. § 2000e-3 because it constituted retaliation for the sexual harassment complaint he made regarding the Tine/Ealy incident.  (Compl. ¶¶ 20-25.) Defendant argues that Plaintiff's superiors who assigned him to AMID were not aware of his sexual harassment complaint and that Plaintiff was not protected by Title VII because the underlying incident did not constitute sexual harassment.

An employee's right to report or complain of unlawful discrimination in employment is protected by Title VII.  Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 269 (2001).  Title VII prohibits an employer from discriminating against an employee because the individual has opposed an unlawful employment practice.  42 U.S.C. § 2000e-3(a).  To demonstrate a prima facie case of retaliation, a plaintiff must prove that: "'(1) [he] engaged in protected activity, (2) [he] suffered an adverse employment action, and (3) there was a causal link between [his] activity and the

employment decision.'" Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1065 (9th Cir. 2003) (quoting Raad, 323 F.3d at 1196-97). If plaintiff can demonstrate a prima facie case for retaliation, then the court utilizes the burden shifting scheme set forth in McDonnell Douglas, 411 U.S. at 801-803. Id. Thus, where the plaintiff makes out a prima facie case, the burden shifts to the defendant to show a non-discriminatory reason for the employment action. Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000) (citing Steiner v. Showboat Operating Co., 25 F.3d 1459, 1464 (9th Cir. 1994)). If the defendant meets its burden, the burden returns to the plaintiff to prove that the proffered reason for the employment action was a pretext for discrimination. Manatt v. Bank of America, NA, 229 F.3d 792, 800 (9th Cir. 2003).

A genuine dispute exists regarding Plaintiff's retaliation claim. In July 2000, a few months after Plaintiff reported his complaint about the Tine/Ealy incident and Marwood investigated his complaint, Plaintiff was selected for the AMID detail. (Def.'s Ex. A at 62:5-21, 64:1-21, 66:4-5; Ex. E at 17:2-19; Ex. F at 1.) Plaintiff's superiors at RAIC/SY chose Plaintiff for the AMID position despite Plaintiff's protests and over fellow employees who volunteered for the assignment. (Pl.'s Ex. G at 37:1-20.) Defendant points to Plaintiff's e-mail agreeing that he was appropriate for the job. Although Defendant contends that the decision makers for the AMID selection were unaware of Plaintiff's involvement in the sexual harassment complaint and aware of his written acknowledgement of fitness for the position, Plaintiff asserts that reasonable inferences support his conclusion that the transfer was motivated by retaliation. These disputes are not merely issues of law, and raise credibility questions for the trier of fact. Based on the proximity of Plaintiff's complaints to his selection for the AMID detail, in combination with the timing of the letter of caution and Plaintiff's non-selection for promotion, the Court concludes that a question of fact exists whether Plaintiff's superiors retaliated against him for reporting the alleged sexual harassment. See e.g. Celotex, 477 U.S. at 324. Accordingly, the Court DENIES Defendant's motion for summary judgment on this claim.

## 2.    Discrimination/Failure to Accommodate: Assignment to the AMID Detail

Plaintiff alleges in Count II of his complaint, that Defendant failed to reasonably accommodate his disability when he was assigned to the AMID detail and discriminated against him in violation of 29 U.S.C. § 791(b), 42 U.S.C. § 12112(a), and 29 C.F.R. § 1630.4(d)(I). (Compl. ¶¶ 26-29.) Defendant argues that Plaintiff, on his own initiative, terminated the interactive process to determine a reasonable accommodation.

The ADA mandates that employers make reasonable accommodations for employees with known disabilities. 42 U.S.C. § 12112(b)(5)(A); Willis v. Pacific Maritime Assoc., 236 F.3d 1160, 1164 (9th Cir. 2001). "[O]nce an employee requests an accommodation or an employer recognizes that the employee needs an accommodation but the employee cannot request it because of a disability, the employer must engage in an interactive process with the employee to determine the appropriate reasonable accommodation." Zivkovic v. Southern California Edison Co., 302 F.3d 1080, 1089 (9th Cir. 2002). There is no critical language that an employee must use to request an accommodation. Barnett v. U.S. Air., Inc., 228 F.3d 1105, 1114 (9th Cir. 2000). Once the employee makes the request, the parties engage in an interactive, flexible process to determine the appropriate, reasonable accommodation. Zivkovic, 302 F.3d at 1089. That process requires: "(1) direct communication between the employer and employee to explore in good faith the possible accommodations; (2) consideration of the employee's request; and (3) offering an accommodation that is reasonable and effective. Id. (citing Barnett, 228 F.3d at 1114-15.). The employer will be held liable for a failure to accommodate, only when the breakdown in the interactive process is attributable to the employer. Id. (citing Beck v. Univ. of. Wis. Bd. of Regents, 75 F.3d 1130, 1137 (7th Cir. 1996)).

The parties dispute who bears the fault for the breakdown in the interactive process. Plaintiff notified Flax about his disabilities and concerns regarding the rigors of the position when he first learned of his assignment to the AMID detail. (Def.'s Ex. A at 102:12-103:1; Pl.'s Ex. 2 ¶ 43.)   Plaintiff claims that he engaged Flax in

- 10 -

conversation about the assignment on numerous occasions.  (Pl.'s Ex. 2 ¶¶ 42-51.)

After repeated attempts to persuade Flax of his inability to perform the AMID

assignment, Plaintiff provided Flax with his medical records to verify his disability.

Flax refused to consider the records, stating that if he looked at them, he would have to

refer Plaintiff for a fitness-for-duty examination and that Plaintiff could lose his job.

(Def.'s Ex. A at 103:14-17, 104:5-7.)  Flax e-mailed Collette regarding his concerns

over Plaintiff's ability to perform the AMID assignment without further injury.  (Def.'s

Ex. H.)  He copied Plaintiff on the e-mail.  (Id.)  Subsequently Plaintiff sent a reply e-

mail to both Flax and Collette, stating that he was willing to accept the AMID position

and was in great shape.  (Id.)  Plaintiff claims he sent the e-mail because he did not want

to lose his job.  (Def.'s Ex. A at 107:1-21.)  Defendant argues that the interactive

process broke down at Plaintiff's will when he sent the e-mail stating that he was

willing to accept the AMID assignment.  However, Plaintiff argues that his superiors,

particularly Flax, all but refused to engage in the process prior to that point.  Plaintiff

presents evidence that other RAIC/SY employees volunteered for the assignment, yet

RAIC/SY chose Plaintiff over his repeated protests.  Plaintiff contends that RAIC/SY

could have chosen another candidate for the AMID position from the list of qualified

candidates or from the entire office pool.  Plaintiff points out that Jeffrey Burdett

volunteered but was turned down in favor of sending Plaintiff.  (Def.'s Ex. E at 18:5-6,

19, 14-24; Pl.'s Ex. G at 37:1-20.)  Based on the totality of the circumstances, the Court

concludes that questions of fact exist whether   Plaintiff or Defendant caused the

breakdown in the interactive process.  See e.g. Celotex, 477 U.S. at 324.  Accordingly,

the Court DENIES Defendant's motion for summary judgment on this claim.

### 3.    Retaliation: Failure to Promote

Plaintiff alleges in Count III of his complaint that the decision not to promote him

in January 2001 violated 29 U.S.C. § 791(b), 42 U.S.C. § 2000e-3(a), and 42 U.S.C. §

12203(a), because it constituted retaliation for his protected EEO activity.  (Compl. ¶¶

30-32.)  Defendant argues that Plaintiff cannot show a causal connection between his

protected activity and his nonselection and even if he could, Plaintiff cannot demonstrate that the proffered reasons for his nonselection were pretextual.

The Court concludes that questions of fact exist as to this issue. Defendant argues that its decision not to promote Plaintiff could not constitute retaliation because Plaintiff did not file an EEO complaint until August, 2001. However, Plaintiff's protected activity began when he reported what he thought was sexual harassment to his superiors at RAIC/SY in January 2000. (Def.'s Ex. A at 62:5-21, 64:1-21, 66:4-5; Def.'s Ex. E at 35:11-14.) Plaintiff contends that shortly thereafter, from January 2000 to August 2001, his superiors at RAIC/SY engaged in conduct which was retaliatory. During that period, he claims that they transferred him to a position they were aware that he did not want and was possibly not physically capable of performing, threatened him with termination, issued a letter of warning, overlooked him for promotion and then declined to promote him at all. Plaintiff has presented sufficient facts to raise a question of pretext. See Manatt, 229 F.3d at 800. Based on the totality of the information in the record and the disputed version of the facts, the Court concludes that a factual question remains on this issue. See e.g. Celotex, 477 U.S. at 324. Accordingly, the Court DENIES Defendant's motion for summary judgment on this claim.

### 4.    Discrimination: Failure to Promote

In Count IV of the complaint, Plaintiff alleges that Defendant discriminated against him based on his disability, in violation of 29 U.S.C. § 791(b), 42 U.S.C. § 12112(a), and 29 C.F.R. § 1630.4(d)(I). (Compl. ¶¶ 33-36.) Defendant argues that no evidence exists that Plaintiff's superiors at RAIC/SY acted with discriminatory animus.

To prove that Defendant discriminated against him in his nonselection, Plaintiff must show that: (1) he belongs to a protected class; (2) he was qualified for the job which he applied for and that the employer actively sought applicants; (3) he was rejected despite his qualifications; and (4) someone of comparable qualifications was ultimately selected. Raad, 323 F.3d at 1193. If Plaintiff makes out a prima facie case, the burden shifts to Defendant to present a nondiscriminatory explanation, at which

1   point Plaintiff must prove pretext.  See Id.

2         Plaintiff claims Defendant's stated reasons for not promoting him were a pretext

3   for discrimination based on his disability.  Defendant argues that Plaintiff was not

4   promoted because of his poor performance, as set forth in the written justification.

5   From the totality of the information in the record, the Court concludes that there are

6   genuine issues of fact whether Defendant's proffered reasons were a pretext.  See

7   Manatt, 229 F.3d at 800; see also Wallis, 26 F.3d at 889.  Accordingly, the Court

8   DENIES Defendant's motion for summary judgment on this issue.

9   **C.     Evidentiary Objections**

10        Plaintiff objects to portions of the evidence offered by Defendant in support of

11  his motion for summary judgment.  To the extent that the evidence is proper under the

12  Federal Rules of Evidence, the Court considered the evidence.  To the extent the

13  evidence is not proper, the Court did not consider it.

14                                    **Conclusion**

15        For the reasons set forth above, the Court **DENIES** Defendant's motion for

16  summary judgment or partial summary judgment.

17        IT IS SO ORDERED.

18  DATED:  September 20, 2006

19

20                                    _____
                                      MARILYN L. HUFF, District Judge
                                      UNITED STATES DISTRICT COURT

21

22

23

24

25

26

27  **COPIES TO:**
    Thomas Lee Tosdal
    Tosdal Smith Steiner & Wax
28  600 B Street, Suite 2100

1  San Diego, CA 92101-4508

2  US Attorney's Office, Civil Division
   Southern District of California
3  880 Front Street, Suite 6253
   San Diego, CA 92101
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

05cv0821-h (por)